UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 08-

HEIDI K. ERICKSON
Plaintiff

v

TOWN OF PLYMOUTH POLICE ET AL.
Defendants

**08 CA 11493 RGS**

### MEMORANDUM OF LAW
### IN SUPPORT OF PRELIMINARY INJUNCTION

The warrantless entry into the home violates the Fourth and Fourteenth Amendments to the United States Constitution and Article 14 of the Massachusetts Declaration of Rights. The right of police officers to enter a home represents a serious governmental intrusion into one's privacy, and must be constrained by a judicial determination of probable cause. *Commonwealth v. Forde*, 367 Mass. 798, 805 (1975). A warrantless entry can only be defended if there are probable cause and exigent circumstances. *Kirk v. Louisiana*, 122 S. Ct. 2458, 2459 (2002); *Coolidge v. New Hampshire*, 403 U.S. 443, 478 (1971). The Commonwealth bears the burden to demonstrate exigency. *Commonwealth v. Huffman*, 385 Mass. 122, 124 (1982).

Under federal law, a search based on exigent circumstances must be "strictly circumscribed by the exigencies which justified its initiation." *Terry v. Ohio*, 392 U.S. 1, 25-26 (1968); see also *Mincey v. Arizona*, 437 U.S. 385, 393 (1978).

Under Massachusetts law, the "emergency" doctrine authorizes a warrantless entry when police reasonably believe that a person within the dwelling is in need of

17

**immediate assistance because of an imminent threat of death or serious injury.**
*Commonwealth v. Marchione*, 384 Mass. 8, 11-12 (1981){emphasis in bold added}. Probable cause is required even under the exigent circumstances exception. *Commonwealth v. Pietrass*, 392 Mass. 892, 897 (1984). The Commonwealth bears the burden of proof. *Commonwealth v. Young*, 382 Mass. 448, 456 (1981).

The standard is whether the officer's actions at the time were objectively reasonable. *Brigham City v. Stuart*, 126 S. Ct. 1943, 1948 (2006); *Commonwealth v. Washington*, 449 Mass. 476, 486 (2007). *Commonwealth v. Skea* 18 Mass.App.Ct.685 (1985) which relies heavily on *Katz v United States* 389 US 347, 357 (1967) "probable cause & exigency may not be enough to justify a warrantless search: that in addition the search must fall within one of several enumerated groups of classes to avoid 4th Amendment invalidity.

There was nothing imperative or exigent about the unauthorized entry of her home at 5 Lothrop Street by the Defendants' Gesce and Feurtado on 8.9.08 they heard from neighbors that Plaintiff was yelling, they heard Plaintiff at the back door, upon their entry they saw Plaintiff alive and well but continued to search and remain in her apartment for 10 minutes and despite 11 requests to leave. The Defendant's actions were harassment.

The highest Courts in this country, including the SJC has held 'the subjective good faith of the officer that an individual might be in need of assistance does not justify either the entry or a subsequent search or arrest' see also *Commonwealth v Cricones*, 12 Mass. App. Ct. 953, 954 (1981). The US Supreme Court has expressed

in *Mincey v. Arizona* 437 US 385, 392 when police have compelling reasons, based upon specific and articulable facts, to believe that other types of emergencies exist, a warrantless search circumscribed by the purpose of the search is permissible but once the Police have determined that no other victims or suspects are on the premises, the warrantless search must end.

The Defendant's allege their subjective analysis is that they heard the neighbors were complaining that Erickson was "harassing them out of her second story window" 911 call dispatched caller complaining of disturbance, the police are dispatched, arrive at Erickson's residence at 6:00PM, at 6:30PM heard Erickson at back door stating "go away", at 6:45 they entered, entering the locked front foyer door, and walking up stairs entered a second door, immediately Erickson being surprised jumped up from her computer, and approached the two officers who entered quickly and walked fast 10 feet into her apartment and as far as they could into the apartment before running into Erickson – evidently Erickson was not in need of life saving intervention. Their approach was intentional, purposeful and then refused to leave upon Erickson repeated request for both to leave – evidently Erickson was not in need of life saving intervention. Immediately one officer attempted to push past Erickson to enter her living room 18 feet from the door at the top of the stairs, while the other office went into Erickson's kitchen which was around the corner and through a hallway to the side of the front door at the top of the stairs – evidently Erickson was not in need of life saving intervention. Erickson counted that she requested the officers leave 11 times, each time the officers refused by claiming that they were there to check on Erickson's welfare, and then started yelling at her that she was in fact yelling out her window at

19

the neighbors, Erickson immediately denied that and said that she was a victim of abuse from her neighbors who two days earlier where overheard instigating a harassment of Erickson in which they said they would call the police on her everyday the officer started to yell back and said that "your lying" "your harassing your neighbors" and "you should move" "we want you to move, they want you to move – MOVE!", "we'll keep coming back and you should move" from 6-8 minutes the officer stood yelling this over and over at Erickson, during which time Erickson repeatedly asked politely for the officers to leave and to stop searching her apartment – evidently Erickson was not in need of life saving intervention. When they finally walked down the stairs to the front doors a lieutenant stood there and said again Erickson was harassing the neighbors but also said that he never witnessed Erickson harassing the neighbors, he stayed in Erickson's doorway, the other two officers on the steps, for an additional 3 minutes, yelling at Erickson that she was a lier and he repeated a childish saying that she was a lier and her pants were on fire "lier, lier pants on fire" – evidencing the harassing nature of this unwarranted search. Erickson cell phone in hand dialed her lawyer and immediately these officers left.

Once the officers entered allegedly to ensure Erickson was not injured finding her apartment there was no circumstances to search and investigate nor to remain in Erickson's Erickson for the 8-10 minutes searching it. The Defendant could argue that the minute the information was know by the Defendants that Erickson did not need life recusing intervention, the officers care taker function was over and an unwarranted search began and the harassment continued. But that is not the standard the courts use

20

to determine whether the search was warranted due to the exigency nature, the Officers knew Erickson to be a victim of repeated harassments, she had informed the Department that she would not make herself available at her door and that she had recently allegedly yelled out the window – as the caller on the 911 taret tape explained "she was harassing them and disturbing their peace"

The Officers search was unreasonable, the officers searched around her apartment clearly beyond the bounds of her constitutionally protected interests and refused to leave until 6:54 at the time Erickson called her lawyer immediately at the 11th request for the police to leave at which time they started to leave. Previously at or around 6:40pm the neighbors are is heard demanding the police to go in and evict her! The Police respond "if you heard her yelling help or something like that we could go in" the Police were coaching the neighbors and harassing Erickson.

The circumstances, viewed objectively, must justify the police action. The officer's' subjective motivation is irrelevant. See *Brigham City v. Stuart*, 126 S. Ct. 1943, 1948 (2006) and *Commonwealth v. Blevines*, 438 Mass. 604, 608 (2003). "[W]hether a search in the constitutional sense has taken place ... turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy." *Commonwealth v. Montanez*, 410 Mass. 290, 301 (1991). Assuming the Erickson had subjective privacy expectations in her apartment, including the front foyer, her private hallway that lead up the stairs, the determinative issue is whether such expectations are reasonable. "That question generally is framed in terms of 'whether society is prepared to recognize such an expectation as reasonable,'

21

*Commonwealth v. Mamacos*, [409 Mass. 635, 639 (1991),] and is treated on review as presenting a question of law." The Police search was well beyond the bounds of decency *Commonwealth v. Starr*, 55 Mass.App.Ct. 590, 593 (2002). Whether the occupant of a multi-unit apartment building has a reasonable expectation of privacy is a question that cannot be answered categorically. *Commonwealth v. Hall*, 366 Mass. 790, 794 (1975). "In evaluating the reasonableness of an individual's expectation of privacy, we look to a number of factors, including the character of the location involved ... whether the Erickson exclusively controlled access to the area ... and whether the area was freely accessible to others." *Commonwealth v. Montanez*, supra at 301-302. It is well established that "an individual can have only a very limited expectation of privacy with respect to an area used routinely by others." *Sullivan v. District Ct. of Hampshire*, 384 Mass. 736, 742 (1981). *Commonwealth v. Montanez*, supra at 302. Given that Erickson's apartment has no common areas, except for the back door hallway and that the police entered her apartment via the front door through a locked door with a key the landlord supplied, the relevant criteria and pertinent case law would appear to place them within Erickson's constitutionally protected privacy zone. See *Commonwealth v. Thomas*, 358 Mass. 771, 774-775 (1971) ("In a modern urban multi-family apartment house ... a tenant's 'dwelling' cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control"). See also *United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir.), cert. denied, 525 U.S. 1029 (1998) ("It is now beyond cavil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building").

**THEREFORE** FOR ALL THE HEREIN REASONS TEMPORARY RESTRAINING ORDERS SHOULD ISSUE IMMEDIATELY TO CIRCUMSCRIBE PLAINTIFF FROM FURTHER HARASSING UNWARRANED SEARCH AND SEIZURES
And
A PRELIMINARY INJUNCTION SHOULD ISSUE RESTRAINING THE DEFENDANTS FROM FURTHER HARASSING, UNLAWFUL ENTRY OF ERICKSON' S HOME AND TO EXTEND THE HEREINABOVE REQUEST FOR TEMPORARY ORDERS.